UNITED STATES OF AMERICA
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT
3:26-CR-0003

UNITED STATES OF AMERICA PLAINTIFF

V.

SENTENCING MEMORANDUM

BILLY L. NOEL DEFENDANT

*****

Comes the Defendant, Billy L. Noel, by Counsel, and for his Sentencing Memorandum, hereby states as follows:

INTRODUCTION

Mr. Noel has taken responsibility for his crimes before this Court and is currently facing a statutory minimum of 5 years for his drug offense and an additional 5 years consecutively for a total of 10 years. However, the guideline recommendation in his case for these offenses is a combined range of 152 to 175 months. The purpose of this memorandum is to support a minimum guideline line sentence of 152 months pursuant to the sentencing factors in 18 U.S.C. §3533.

NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Noel's crimes of drug trafficking and firearms crimes are straightforward. Mr. Noel was parked in front of his father's house waiting in a vehicle. A call was made to the police concerning this vehicle which resulted in the police searching the car. The search resulted in the police discovering 219 grams of methamphetamine, a bag of marijuana and psychedelic mushrooms. Furthermore, the police located a loaded 9 mm pistol under the driver's seat. He was arrested without incident, and he has been detained since his arrest.

As explained in one of the letters in his support set forth below, he became frustrated and depressed because after his release from prison, employment was not steady and he was unable to pay his half of the bills with his fiancé. As a result, he returned to the street to make money. The Commission's most recent empirical examination of federal methamphetamine cases supports treating Defendant as a street-level dealer rather than a wholesaler or organizational supplier. The Commission defines a street-level dealer as one who owns the drugs and distributes retail or user quantities directly to users. In its fiscal-year 2022 study, the average amount seized from street-level dealers was 118 grams, compared with 516 grams for wholesalers, 10,125 grams for high-level suppliers, and 21,288 grams for couriers. U.S. Sent'g Comm'n, *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System* 37–40 (2024). The 219 grams recovered here is substantially below the Commission's wholesaler average and only a small fraction of the amount associated with high-level suppliers. More importantly, there is no evidence that Defendant supplied other dealers, directed participants, participated in an organization, imported drugs, or exercised authority over a distribution network. The separate marijuana and mushroom bags are also consistent with the Commission's finding that drug use—including marijuana use—is common among street-level methamphetamine dealers. The available evidence therefore describes a street-level seller, not the type of wholesale or organizational trafficker for whom the quantity-driven guideline was principally designed.

In relation to his weapon convictions, these all stem from the pistol found under the driver's side seat. Defendant does not minimize the seriousness of possessing a firearm in furtherance of drug trafficking, and his guilty plea acknowledges that offense. But the particular manner of possession remains relevant to the sentence required by §3553(a). The firearm remained underneath the driver's seat. It was not displayed, brandished, discharged, or employed to threaten

anyone, and the offense involved no violence or injury. The Sentencing Commission reports that 69 percent of § 924(c) defendants fall within the statute's five-year possession-or-carrying category, compared with 21 percent whose conduct involved brandishing and nine percent whose conduct involved discharge. U.S. Sent'g Comm'n, Quick Facts: Section 924(c) Firearms (FY 2025). Defendant's conduct therefore falls within the least aggravated and most common statutory category, for which Congress has already required a substantial five-year consecutive sentence. That mandatory punishment fully accounts for the firearm conduct and out of the statutory uses of a firearm, passive possession is the least aggravating. Furthermore, in determining the sentence on the drug count, the Court may consider that Defendant will serve an additional mandatory 60 months consecutively. *Dean v. United States*, 581 U.S. 62, 67–69 (2017).

HISTORY AND CHARRACTERISTRICS OF BILLY NOEL

Billy Noel is 49 years old. He had a difficult upbringing and was surrounded by physical, verbal abuse and alcoholism. His mother has struggled with alcohol since he was a young child. At age 7, he had to go move in with his grandparents for four to five years before returning to live with his mother. However, she tended to be beat her children with extension cords. Billy does not maintain a relationship with his mother due to her past and current personal problems. Although he has reconciled and connected with this father later in life, his father was not around much as he grew up.

Billy has never been married and has fathered no children. When able to be employed, he found what jobs he could in the construction business as a laborer. He does have some previous training that he took while he was incarcerated in plumbing and construction. He would like to similarly use his time from this case to get further vocational training. He hopes to maintain his

relationship with his fiancé until he is released and would like to have some more employable skills, such as in HVAC and welding.

There has been an outpouring of support for Billy from people that have known him personally over the years. Heather Fugate writes that she has known Billy for many years and can honestly say that he is a compassionate individual. Ms. Fugate describes her understanding of his difficult childhood and that, although this is not an excuse for criminal behavior, she does believe that his upbringing played a significant role in the path he has taken. *See* Letter from Heather Fugate attached as Exhibit A. Another person that has known Billy for over 20 years is Tabitha Robinson. She is Billy's sister's best friend and grew to know Billy through that relationship. After his release from prison, she describes Billy as being in survival mode. She describes his efforts to find a job, but that he was turned down time and time again. She even feels like she failed Billy because she did not help him more while he was out. She describes her own struggles with addiction and when Billy was supportive and encouraged her to believe that her addiction was not who she was. He supported her during her time when she was digging herself out of rock-bottom. *See* Letter from Tabitha Robinson attached as Exhibit B.

Another lady named Sandie Eastman has known Billy for a long time. She used to be his girlfriend before he went to prison in 1999. She was adamant in her letter that she would not have written a letter in support for Billy if she hadn't witnessed and noticed a change from the "bad boy" image that he had used as a shield to hide his own vulnerability. Ms. Eastman described seeing him after his release and she was so impressed with his change that she bought a jar to fill with notes about his changes. She is also impressed that Billy is now on a spiritual journey and, because of this, has a more positive outlook. In light of these recognized positives in his life, she is comfortable giving him her support for this Court's consideration. *See* Letter from Sandie

Eastman attached as Exhibit C. Denise Quire also wrote a short letter but does make a good point. She notes that Billy now has the tools and people in place to better his future. *See* Letter from Denise Quire attached as Exhibit D. Finally, Jennifer Sutherland has known Billy on a more recent basis, but they have developed a relationship and even her grandsons call the defendant "Uncle Billy." She describes him as a giving person who would give you the shirt off his back if she needed it. She describes him as having big heart and respectful to others. She too echoes that Billy has the friends and support to help him both while he is in prison and when he gets out. *See* Letter from Jennifer Sutherland attached hereto as Exhibit E.

Mr. Noel is the first person to recognized that his criminal history involves serious prior offenses and that part of the sentence in the present case is to reflect his history as well as the present offense. The one request for addition to his Presentence Report he had was in relation to the 1999 assault second degree conviction. He wanted the Court to know that, yes, he did shoot a shotgun containing bird shot towards two male individuals standing outside their car after an altercation. He was not aware that another person was sitting in the car. At no time did he know a child was in the car. Both these people were injured when the bird shot ricocheted and struck them. Billy states that the woman and the child were released form the hospital on that same day. He felt so bad about this that that he looked up the woman and the young child after getting out of prison and apologized to them both. The woman has become his friend and told him that she knew he never intended to shoot her. Another one of this 3-point offenses was trafficking a small amount of marijuana in close proximity to a school when he was 19. His final 3-point offense was a burglary conviction for stealing firearms at age 29. These are serious offenses, but they were all committed 20 years or more in the past.

JUST PUNISHMENT, RESPECT FOR THE LAW AND DETERRENCE

Mr. Noel understands that the Court must imposed punishment in his case to reflect sentencing factors such as specific and general deterrence and respect for the law. In relation to general deterrence, the minimum guideline recommendation of 152 months is appropriate to send the message to others who are thinking of committing similar crimes. The U.S. Department of Justice/Office of Justice Programs/the Nation Institute of Justice release a publication called *Five Things About Deterrence.*[1] In this report, it was noted that long prison sentences do very little to deter criminal conduct generally, but the chances of being caught are vastly more effective. The certainty of getting caught is more effective on general deterrence than the certainty of a stiff sentence, especially in market driven crimes like drug trafficking were removing one drug dealer from society leads another to fill the economic void.

However, on the other hand, long sentences of 10 years do have a direct impact on deterrence of the specific defendant. The Sentencing Commission has published data driven research that "offenders incarcerated for more than 120 months were identified as having a statistically significant deterrent relationship between incarceration and recidivism." U.S. Sent'g Comm'n, *Length of Incarceration and Recidivism*, p. 30 (2020). The Commission further stated that there is 45% less likely chance to recidivate in comparison to groups receiving less sentences. *See* Id. at p.4. In relation to 924(c) convictions that also had an underlying drug charge, the average sentencing for such defendant was 142 months and with an overall average sentence for all 924(c) offenders was 149 months. *See* U.S. Sent'g Comm'n, Quick Facts: Section 924(c) Firearms (FY 2025). Mr. Noel's minimum guideline sentence with the 924(c) charge is included in 152 months.

[1] Found at ojp.gov

Mr. Noel's Criminal History Category VI warrants serious consideration, but it should be considered together with his age at projected release. The Sentencing Commission has found that age and criminal history are both significant predictors of recidivism and that, "[c]onsidered together, they are even better predictors." U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010* 29–30, tbl. 4 (2021).

The Commission's updated analysis demonstrates a substantial age-related decline even among offenders in Criminal History Category VI. Over an eight-year follow-up period, the rearrest rate for Category VI offenders declined from 73.1 percent for those released between ages 40 and 49, to 65.3 percent for those released between ages 50 and 59, and to 46.9 percent for those released at age 60 or older. *Id.* at 30 tbl. 4. Therefore, within Category VI itself, release after age 60 was associated with a 26.2-percentage-point reduction in rearrest compared with release between ages 40 and 49.

The Commission obtained the same basic result in an earlier study. In that publication, 37.7 percent of Category VI offenders released at age 60 or older were rearrested, compared with 64.9 percent of those released between ages 50 and 59, 80.2 percent of those released between ages 40 and 49, and 89.7 percent of those released before age 30. U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 25 fig. 22, app. at A-45 (2017). Although the two studies produced different absolute rates, both demonstrate the same material point: even among offenders in the highest criminal-history category, recidivism declined substantially as age at release increased.

The offense-specific research further demonstrates the importance of Mr. Noel's age at release. Among federal drug-trafficking offenders, the eight-year rearrest rate declined from 39.7 percent for offenders released between ages 40 and 49, to 30.9 percent for those released between

ages 50 and 59, and to 16.4 percent for those released at age 60 or older. U.S. Sent'g Comm'n, *Recidivism of Federal Drug Trafficking Offenders Released in 2010* 28–29 fig. 12, 46 tbl. 11 (2022). The same age-related decline appears even when the analysis is limited to offenders with violent instant or prior conduct and the most serious criminal histories. Among violent offenders in Criminal History Category VI, the eight-year rearrest rate declined from 82.7 percent for those released between ages 40 and 49, to 74.7 percent for those released between ages 50 and 59, and to 48.5 percent for those released at age 60 or older. U.S. Sent'g Comm'n, *Recidivism of Federal Violent Offenders Released in 2010* 31 tbl. 4 (2022). Thus, even within this higher-risk comparison group, release at age 60 or older was associated with a 34.2-percentage-point reduction in rearrest compared with release between ages 40 and 49.

The Commission's drug-trafficking publication also reported that methamphetamine-trafficking offenders released at age 60 or older had a 13.6-percent rearrest rate, compared with 38.2 percent for those released between ages 40 and 49 and 25.6 percent for those released between ages 50 and 59. U.S. Sent'g Comm'n, *Recidivism of Federal Drug Trafficking Offenders Released in 2010* 46 tbl. 11, 110 fig. E-12 (2022). Although the methamphetamine-specific subgroup was comparatively small, it reflects the same inverse relationship between age and recidivism found throughout the Commission's broader research.

Mr. Noel has just turned 49 years old. A sentence of 152 months—the bottom of the combined advisory guideline range—would return him to the community at approximately age 60. It would therefore incapacitate him throughout most or all of his fifties and return him to the community only as he reaches the age at which the Commission's research documents a pronounced reduction in recidivism.

These statistics do not establish that Mr. Noel presents no future risk, nor do they negate his serious criminal history. Rather, they demonstrate that the requested 152-month sentence will incapacitate Mr. Noel throughout the period of comparatively greater risk and release him only after advancing age has materially reduced that risk. Criminal History Category VI measures Mr. Noel's past, but it does not erase the Commission's empirical findings concerning his likely risk when he eventually returns to the community.

RECOMMENDATIONS AND REQUESTS

There are other tools available at the BOP to also assist Mr. Noel in re-establishing himself into society and reduce his chances of re-offending. Mr. Noel respectfully requests that the Court recommend placement, consistent with his security classification and proximity to Kentucky, at a Bureau of Prisons institution offering vocational training, certification, or apprenticeship in HVAC, refrigeration, welding, or related building trades. He further requests a recommendation that he participate in Drug Abuse Education, Nonresidential Drug Abuse Treatment if clinically appropriate, and available cognitive-skills programming addressing emotional regulation, consequential thinking, and responsible decision-making.

Mr. Noel also requests that any sentence anticipated to be imposed in the same underlying Anderson County case, Commonwealth v. Noel, 25-cr-97, be ordered to run concurrently with the sentence imposed by this Court for the underlying drug count. *See* paragraph 49 of PSR. Should the Court impose the minimum guideline recommendation of 92-months, then Mr. Noel request that this time run concurrently with any term of imprisonment imposed in in the Anderson County case because that anticipated state sentence arises from conduct relevant to the federal offense under U.S.S.G. §§ 1B1.3 and 5G1.3(c). The 60-month term imposed under 18 U.S.C. § 924(c) shall run consecutively as required by statute.

WAVIER OF FINE

Finally, Mr. Noel requests that the Court waive the fine in his case. He has neither assets nor money. Furthermore, Counsel was appointed to represent him because of his status as indigent, and he was unable to post bond in the underlying state case. Mr. Noel will be approximately 60 years old when released and although he anticipates and desires to work when released, he will literally be starting over from nothing. Therefore, it does not appear that Mr. Noel has either the present or future ability to pay a fine and a fine will place an undue burden on the Defendant. *See* U.S.S.G. §5E1.2(d) and at app. n. 3.

CONCLUSION

Mr. Noel requests the minimum guideline line sentence—32 months above that statutory floor and the bottom of the combined advisory guideline range. A sentence of 152 months is no greater than necessary to comply with the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully Submitted,

s/ Jeffrey C. Rager________
Jeffrey C. Rager
Rager Law
jrager@ragerlawky.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Sentencing was served upon Aubrey Girouard, AUSA, for the Eastern District of Kentucky through the Court's electronic filing system on this the September 2, 2026.

s/ Jeffrey C. Rager________